UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DANNY GRODOTZKE and ROBERT
RUGGIERIO, as Trustees of PLUMBERS
LOCAL UNION NO. 200 WELFARE FUND,
PENSION FUND, VACATION FUND,
SUPPLEMENTAL VESTED ANNUITY FUND,
ADDITIONAL SECURITY BENEFITS FUND
and APPRENTICE TRAINING FUND, and
JAY MARELLI as President of PLUMBERS
LOCAL UNION NO. 200, UNITED
ASSOCIATION of JOURNEYMEN and
APPRENTICES of the PLUMBING AND PIPE
FITTING INDUSTRY of the UNITED STATES
and CANADA,
     Plaintiffs,

-against-

SEAFORD AVENUE CORP., G and M
MECHANICAL, INC., GEORGE LUKSCH,
MICHAEL SCOTT, and COLONIAL SURETY
COMPANY,

     Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
**13-CV-029 (SJF)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ APR 28 2014 ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

  Plaintiffs bring this action to recover unpaid fringe benefit contributions and for breach of fiduciary duty. Pending before the Court is the moving defendants'[1] partial motion to dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6),[2] plaintiffs' first, second, fifth,

---

[1] Defendant Colonial Surety Company is not a party to this motion.

[2] Moving defendants invite this Court to decide their motion as one for summary judgment based on FRCP 12(d), which requires a court to convert a 12(b)(6) motion to one for summary judgment when matters beyond the scope of the pleadings are considered. They argue that plaintiffs' first and second claims should be dismissed because the complaint does not allege that the subject work was performed in the region covered by the relevant CBA and Trust Agreements. To that end, they submit the relevant CBA, Trust Agreements and copies of contracts to establish that the work was performed outside of the relevant area. The Court declines to convert the motion into one for summary judgment, however, because no evidentiary foundation has been offered and the contracts are therefore inadmissible. *See* Federal Rule of Evidence 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is

sixth and eighth claims.[3] For the following reasons, moving defendants' motion is **DENIED** in part and **GRANTED** in part.

I.   **Background**

This action arises under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3). Plaintiffs, the trustees of several employee benefit plans, bring this action against defendants Seaford Avenue Corporation ("Seaford"), G and M Mechanical, Inc. ("G & M"), George Luksch ("Luksch") and Michael Scott ("Scott") (collectively "moving defendants"), alleging they constitute a single employer or are alter egos of one another, such that G & M is bound by a collective bargaining agreement to which Seaford is a signatory and that both are liable to plaintiffs for delinquent employer contributions.

Plaintiffs allege that defendants violated Sections 515, 406 and 404 of ERISA, 29 U.S.C. §§ 1145, 1106, 1104 and failed to comply with their statutory and contractual obligations arising under defendant Seaford's collective bargaining agreement ("CBA") with the Union. Plaintiffs also request declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28

---

what the proponent claims it is."); *see also Gissinger v. Yung*, No. 04 Civ. 534, 2007 WL 2228153, at *3 (E.D.N.Y. July 31, 2007) (excluding exhibits offered as evidence based on a failure to lay a proper evidentiary foundation). In addition and based on the allegations in the complaint, plaintiffs are entitled to further discovery concerning these contracts.

Conversely, the Court may rely on the relevant CBA and Trust Agreements because they are incorporated into the complaint by reference. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding that a complaint is deemed to include materials incorporated by reference and documents "not included by reference, [but] 'integral' to the complaint.") (internal citations omitted).

[3] Plaintiffs withdrew their seventh claim for relief as moot after defendants replaced the fringe benefit bond in compliance with the collective bargaining agreement with Plumbers Local Union No. 200. DE 29. Accordingly, plaintiffs' seventh claim is dismissed as moot.

U.S.C. §§ 2201 and 2202. Compl. ¶ 1. Plaintiffs Danny Grodotzke and Robert Ruggierio are fiduciaries of the Funds within the meaning of ERISA, 29 U.S.C. §§ 1002(21) and 1132. *Id.* at ¶ 4. Plaintiff Jay Marelli is President of the Union, a labor organization within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a). *Id.* at ¶ 5.

Plaintiff Funds are and have been employee benefit welfare plans and/or employee benefit pension plans as defined in ERISA, 29 U.S.C. § 1002(1) and (2). *Id.* at ¶ 6. The Funds, operated pursuant to the terms of the CBA, Written Agreements and a Declaration of Trust ("Trust Agreements"), collect required benefit contributions and provide various fringe benefits to eligible employees. *Id.* at ¶ 7.

Defendants Seaford and G & M are corporations organized and existing under the laws of New York State with a place of business at 21 Brooklyn Avenue, Massapequa, New York. *Id.* at ¶¶ 8, 9. Defendants Luksch and Scott are both individuals with a place of business at 21 Brooklyn Avenue, Massapequa, New York. *Id.* at ¶¶ 10, 11.

## II.  Discussion

### A.  Legal Standard

When considering a motion to dismiss a complaint for failure to state a claim, the court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, it is "well settled that conclusory allegations merely stating general legal conclusions necessary to prevail on the merits of a claim, unsupported by factual averments will not be accepted as true." *ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.*, No. 02 Civ. 1103, 2005 WL 1843253, at *3 (N.D.N.Y. July 29, 2005). The Supreme Court has held that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff pleaded claims for which he or she is entitled to discovery. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); *Chance*, 143 F.3d at 701.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should entertain a motion to dismiss by following a two-pronged approach:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

The Federal Rules of Civil Procedure require a "short plain statement of the claim showing that the pleader is entitled to relief." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8(a)(2) requires that a pleading set forth facts that the pleader is entitled to relief and provide a defendant with fair notice. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

**B.    Analysis**

    **1.    Plaintiffs' First Claim**

Plaintiffs' first claim alleges that defendants Seaford and G & M constitute either a single employer, and/or a joint employer, and/or are alter egos of one another and are jointly and severally liable for unreported and unpaid fringe benefit contributions and assessments owed to

the Funds. *Id.* at ¶¶ 41, 42. Defendants argue that this claim should be dismissed because plaintiffs' complaint fails to identify the nature, dates, location and extent of the work covered by the CBA.

Separate companies are considered a "single employer" if they are " 'part of a single integrated enterprise.' " *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985) (quoting *NLRB v. Browning-Ferris Indus., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). To determine whether separate companies are a "single employer," courts apply a four-factor test. The test analyzes the " 'interrelation of operations, common management, centralized control of labor relations and common ownership.' " *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) (quoting *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)). "Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises." *Id.* (citing *Three Sisters Sportswear Co.*, 312 N.L.R.B. 853, 1993 WL 398465, at *15 (N.L.R.B. Sept. 30, 1993)). "Not all of these factors must be found to establish the existence of a single employer, and no one factor is controlling. Single employer status depends on all the circumstances of a particular case, and is characterized by an absence of an arm's-length relationship found among unintegrated companies." *Three Sisters Sportswear*, 1993 WL 398465, at *15.

Plaintiff's complaint alleges that the CBA was entered into on Seaford's behalf by or at the direction of defendants Luksch and/or Scott in their capacities as officers of Seaford. Compl. ¶ 18. Under the CBA, Seaford is subject to and bound by the Trust Agreements. *Id.* at ¶ 20. Luksch and/or Scott are and were at all relevant times directly responsible for the day-to-day

management of the business and affairs of Seaford and G & M ("company defendants"). *Id.* at ¶ 22.

The company defendants share common ownership and corporate officers and/or directors. *Id.* at ¶ 23. Seaford and G & M conducted business operations from the same premises and shared: equipment, management, supervision, control over labor relations, professional and administrative services, including office staff, and had common customers and employees. *Id.* at ¶¶ 24-30. Employees of the company defendants shared similar working conditions, skills, job classifications and job functions. *Id.* at ¶¶ 31-33. Employees of the company defendants reported to and/or were directed by the same individuals and/or worked from the same location and performed the same or similar services for both companies' customers. *Id.* at ¶¶ 34, 35.

Luksch and/or Scott, as controlling shareholders and/or corporate officers of Seaford and G & M, exercised complete control over the labor relations and finances of both companies. They exercised this control to determine which employees would to be paid by which company and which employees had fringe benefit contributions and assessments paid into the Funds. *Id.* at ¶¶ 38-39.

Taken as true and based on the relevant factors, the complaint's allegations state a plausible claim that G & M is an alter ego of Seaford or that the two companies constitute a single employer. *See Trustees of the Mosaic & Terrazzo Welfare Pension, Annuity & Vacation Funds v. Continental Floors, Inc.*, No. 13 Civ. 1739, 2013 WL 5637492, at *6 (E.D.N.Y. Oct. 15, 2013) ("The weight of authority compels the conclusion that the allegations in the Complaint, although lean, are sufficient to state a plausible claim."); *Trustees of the Hollow Metal Trust*

*Fund v. FHA Firedoor Corp.*, No. 12 Civ. 7069, 2013 WL 1809673, at *4 (S.D.N.Y. Apr. 30, 2013) (denying motion to dismiss alter ego claim where the trustee "summarily pleaded" each of the factors).

Additionally, defendants' argue that the work was not performed within the geographical area covered by the CBA. Their argument is, however, unavailing because the company defendants' alleged liability is not premised on any specific jobs or work locations. Rather, the claim seeks to establish Seaford's liability as a signatory to the CBA and Trust Agreements and non-signatory G & M's liability based on the moving defendants' conduct. Accordingly, moving defendants' motion to dismiss plaintiffs' first claim is denied.

### 2. Plaintiffs' Second Claim

Plaintiffs' second claim alleges that company defendants, Seaford and G & M, violated the CBA by employing a "double-breasted operation" and/or subcontracting work covered by the CBA between and among one another and/or their subsidiaries, affiliates, and/or related business operations and/or have provided labor between and among one another. Compl. ¶ 46.

"In the construction industry, and elsewhere, there is a practice generally referred to as "double breasting" pursuant to which a single commercial complex functions through two corporate entities; one, a corporation which is a party to a collective bargaining agreement and subject to its provisions; a second non-union entity which is not subject to such an agreement." *U.S. for use of Tower Masonry, Inc. v. J. Kokolakis Contracting, Inc.*, No. 93 Civ. 63698, 1995 WL 539742, at *6 (S.D.N.Y. Sept. 8, 1995). *See Local One, Amalgamated Lithographers of America v. Stearns & Beale, Inc.*, 812 F.2d 763, 770 (2d Cir. 1987) ("A double-breasted operation is one in which one subcontractor operates a union company that bids on union

contracts and a nonunion company that bids on nonunion contracts.").

The relevant portion of the CBA provides that it applies:

> If the Contractor performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Contractor, through its officers, directors, partners, owners or stockholders, exercises directly or indirectly (including but not limited to management, control, or majority ownership through family members) management, control, or majority ownership, the terms and conditions of this agreement shall be applicable to all such work.

*Id.* at ¶ 44. The CBA also provides:

> The Employer agrees that he will not subcontract or sublet any work covered [by the trade or work jurisdiction] to be performed at the site of the construction, repair or alteration unless the Employer to whom the work is subcontracted or sublet is a signatory to this Agreement. Further, this contract prohibits a signatory from entering into or performing "labor only" contracts. That is, in no event shall a Contractor enter into or perform any work covered under the Collective Bargaining Agreement that entails providing labor only without the Contractor furnishing, through direct purchase and payment by the signatory Contractor, at least eighty (80) percent of the materials associated with that subcontract.

*Id.* at ¶ 45. Plaintiffs allege that company defendants violated the CBA by failing to pay required fringe benefit contributions and assessments, and by omitting from contribution report forms submitted to the Funds, hours of work relating to such double-breasted operations and/or subcontracting of work and/or using labor between and among one another and/or their related business operations, for which contributions and assessments were required. *Id.* at ¶ 47. In addition, defendants have knowingly failed to make payments to the Funds as required and have falsely reported to the Funds and concealed hours of paid employment for which contributions and assessments were required with the intent, purpose and/or consequence of evading defendants' obligations under the CBA and Trust Agreements. *Id.* As a result, company

defendants are jointly and severally liable for the unreported and/or unpaid contributions and assessments. *Id.* at ¶ 48.

Considering the above cited portions of the CBA and accepting as true the complaint's allegations, plaintiffs would be entitled to the unreported and/or unpaid contributions and assessments from non-union defendant G & M if it did, in fact, perform on-site work covered by the CBA. Accordingly, company defendants' motion to dismiss plaintiffs' second claim is denied.

### 3. Plaintiffs' Fifth Claim

Plaintiffs' fifth claim seeks to hold the moving defendants liable for breach of their fiduciary duties pursuant to ERISA, 29 U.S.C. § 1104(a)(1)(A) and (D). *Id.* at ¶¶ 64, 72. Title 29 U.S.C. § 1104(a)(1)(A) provides that a fiduciary shall exercise the "prudent man standard of care," to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administrating the plan. . . ." Section 1104(a)(1)(D) provides that a fiduciary shall discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent" with ERISA. In pertinent part, 29 U.S.C. § 1002(21)(A) provides that a person is a fiduciary "with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." "Thus, whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). "A

fiduciary breaches his § 1104 duty to a plan participant by preventing or interfering with the receipt of benefits to which the participant is entitled." *Id.* at 813.

Plaintiffs allege that as a result of the work performed under the CBA by or on behalf of the company defendants, moving defendants received sums of money from construction projects to pay for the wages and benefits of the employees who furnished labor for said projects, yet the fringe benefit contributions, dues and wage deductions remain unpaid. Compl. ¶ 65. Thus, defendants, fiduciaries within the meaning of ERISA under the common law and Article 3(A) of the New York Lien Law, are liable for the construction project proceeds and/or plan assets and/or dues deductions they failed to timely pay to plaintiffs. *Id.* at ¶ 66.

Plaintiffs also allege that at all relevant times, defendants Luksch and Scott completely owned and/or controlled and dominated the company defendants' affairs and carried on the company defendants' business for their own personal ends. *Id.* at ¶ 67. Similarly, Luksch and Scott exercised managerial and discretionary control to determine when and how much would be paid to plaintiffs. *Id.* at ¶¶ 68, 69. Luksch and Scott commingled construction project proceeds and/or plan assets and/or dues and fringe benefits deducted from employees' wages, with the company defendants' general assets and the proceeds that should have been forwarded to plaintiffs were instead used to pay moving defendants' other creditors. *Id.* at ¶ 70. Defendants Luksch and/or Scott also diverted, for their own personal use and benefit, the company defendants' assets and monies which rightfully belong to plaintiffs, in violation of their fiduciary duties to plaintiffs and the Funds' beneficiaries under ERISA, 29 U.S.C. § 1104(a)(1)(A). *Id.* at ¶¶ 71, 72. By diverting construction project proceeds and failing to abide by the documents and governing instruments, moving defendants also violated ERISA, 29 U.S.C. § 1104(a)(1)(D). *Id.*

at ¶ 73.

Where there is a plausible allegation that a defendant exercised sufficient control and authority over a company's account, which holds employee Fund contributions, and has the authority to determine "which of [its] creditors would be paid or in what order," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997), that individual is a fiduciary within the meaning of ERISA. *See id.* (holding that the commingling of plan assets with a company's general assets and using those assets to pay creditors instead of forwarding them to the Funds rendered defendant "a fiduciary for purposes of imposing personal liability under ERISA").

Plaintiffs have adequately alleged that Luksch and Scott are fiduciaries under ERISA and that they breached their duties by commingling plan assets with company assets and using those monies to pay their creditors instead of forwarding the plan assets to the Funds. Accordingly, moving defendants' motion to dismiss this claim is denied.

### 4. Plaintiffs' Sixth Claim

Plaintiffs' sixth claim alleges that moving defendants violated ERISA, 29 U.S.C. § 1106(a)(1)(A) and (B) by engaging in certain transactions with parties in interest, including exchanging property or extending credit. Compl. ¶ 77.

Title 29 U.S.C. § 1106(a)(1) provides that except for circumstances not applicable here, a "fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect–(A) sale or exchange, or leasing, of any property between the plan and a party in interest; [or] (B) lending of money or other extension of credit between the plan and a party in interest. In pertinent part, 29 U.S.C. §

1002(14) provides:

> The term "party in interest" means, as to an employee benefit plan–
>
> (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
>
> (B) a person providing services to such plan;
>
> (C) an employer any of whose employees are covered by such plan. . . .

"The *per se* prohibitions identified in . . . ERISA, 29 U.S.C. § 1106, are designed to prevent categories of 'insider' transactions which Congress believed offered an especially high potential for abuse of plan assets." *Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, No. 95 Civ. 7247, 1998 WL 477964, at *8 (S.D.N.Y. Aug. 14, 1998) (citing *Cutaiar v. Marshall*, 590 F.2d 523, 529 (3d Cir. 1979)).

Plaintiffs allege that at all relevant times, defendants were parties in interest with respect to the Funds, as defined in ERISA, 29 U.S.C. § 1002(14). *Id.* at ¶ 78. By diverting construction project proceeds and/or withholding plan assets and/or dues and fringe benefits deducted from employees' wages from the Funds, defendants dealt with plan assets in their own interest an/or exchanged property or extended credit from plan assets for their own use and benefit in violation of 29 U.S.C. § 1106(a) and (b). *Id.* at ¶ 79.

As discussed above, defendant Luksch and Scott are parties in interest within the meaning of ERISA because both are fiduciaries with respect to the plans. They are also employers whose employees are covered by the plan. *See* 29 U.S.C. § 1002(14)(A) and (C). Accepting as true the allegations that Luksch and Scott diverted the construction project proceeds and/or withheld plan assets for their own use, plaintiffs have adequately pled that defendants used plan assets for their

own use and benefit in violation of ERISA. Defendant's motion to dismiss plaintiffs' sixth claim is therefore denied.

### 5. Plaintiffs' Claim for Injunctive Relief

Plaintiffs' eighth claim seeks to enjoin moving defendants from further violations of ERISA, the LMRA, CBA and Trust Agreements pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

"An injunction should be granted when the intervention of a court of equity is essential to protect a party's property rights against injuries that would otherwise be irremediable." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citing *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). "The court may enter an injunction against a defaulting ERISA defendant if the plaintiffs demonstrate that they are entitled to such relief under the statute and that they otherwise satisfy the requirements for an injunction." *Gesualdi v. C.F.I. Associates, Inc.*, No. 09 Civ. 5454, 2011 WL 1322315, at *12 (E.D.N.Y. Mar. 10, 2011) (citing *Cement and Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, No. 06 Civ. 2953, 2007 WL 2712314, at *6 (E.D.N.Y. Sept. 13, 2007)). "The basic requirements to obtain injunctive relief have always been a showing of irreparable injury and the inadequacy of legal remedies." *Tickor Title Ins. Co.*, 173 F.3d at 68.

Title 29 U.S.C. § 1132(a)(3) provides, in pertinent part, that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." As fiduciaries who complain that moving defendants violated the terms of the

-13-

CBA and Trust Agreements, plaintiffs satisfy the first requirement for injunctive relief.

With respect to the irreparable harm and absence of an adequate remedy at law, plaintiffs allege that if this Court does not enjoin defendants from further violations of ERISA, the LMRA, the CBA and Trust Agreements, plaintiffs and the Funds' participants and beneficiaries will be further damaged in ways and amounts which cannot be accurately measured in terms of money. Compl. ¶ 86. In addition, defendants have failed to comply with their obligations to plaintiffs and the Funds' participants and beneficiaries, despite demands for compliance, and unless they are enjoined from continuing to violate ERISA, defendants will continue to fail to timely remit required contributions, deductions and monthly remittance reports, causing additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Funds and endangering the payment of promised benefits to qualified beneficiaries. *Id.* at ¶ 87.

Plaintiffs' conclusory allegations, however, do not establish that defendants have violated, or will continue to violate ERISA, or that monetary damages are inadequate to deter future violations or that the lack of a injunction will create irreparable harm. Moreover, a federal court cannot issue an order which does nothing to affect the rights and obligations of the parties. Thus, plaintiffs' request to enjoin defendants is essentially moot because moving defendants are already obligated by the CBA and Trust Agreements. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Federal courts are without power to decide questions that cannot affect the rights of litigants before them."). For the foregoing reasons, defendants' motion to dismiss plaintiffs' request for injunctive relief is granted.

### III. Conclusion

For all the foregoing reasons, moving defendants' motion to dismiss plaintiffs' first, second, fifth and sixth claims is **DENIED**. Moving defendants' motion to dismiss plaintiffs' eighth claim for injunctive relief is **GRANTED**.

**SO ORDERED.**

Dated: April 28, 2014
       Central Islip, New York

                                                s/ Sandra J. Feuerstein
                                                Sandra J. Feuerstein, U.S.D.J.